TH:MRG/ALK/AMR
F. #2020R00939

FILED
IN CLERK'S OFFICE
US DISTRICT COURT
E.D.N.Y.
* NOVEMBER 02, 2023 *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JOSEPH LANNI,
        also known as "Joe Brooklyn"
        and "Mommino,"
DIEGO TANTILLO,
        also known as "Danny" and
        "Daniel,"
ROBERT BROOKE,
SALVATORE DILORENZO,
ANGELO GRADILONE,
        also known as "Fifi,"
KYLE JOHNSON,
        also known as "Twin,"
JAMES LAFORTE,
        also known as "Jimmy,"
VINCENT MINSQUERO,
        also known as "Vinny Slick,"
VITO RAPPA,
        also known as "Vi," and
FRANCESCO VICARI,
        also known as "Frank" and
        "Uncle Ciccio,"

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## I N D I C T M E N T

Cr. No. 23-CR-443
(T. 18, U.S.C. §§ 371, 664, 922(g)(1),
  924(a)(2), 924(d)(1), 981(a)(1)(C), 1349,
  1513(b)(1), 1513(b)(2), 1951(a),
  1955(d), 1962(d), 1963(a), 1963(m), 2
  and 3551 et seq.; T. 21, U.S.C., § 853(p);
  T. 28, U.S.C. § 2461(c))

Judge Frederic Block
Magistrate Judge Joseph A. Marutollo

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

The Enterprise

1.      The Gambino organized crime family of La Cosa Nostra, including its

leaders, members and associates, constituted an "enterprise," as defined in Title 18, United States

Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter, the

"Gambino crime family" or the "Enterprise").   The Enterprise constituted an ongoing

organization whose members functioned as a continuing unit for a common purpose of achieving

the objectives of the Enterprise.   The Gambino crime family engaged in, and its activities

affected, interstate and foreign commerce.   The Gambino crime family was an organized

criminal group that operated in the Eastern District of New York and elsewhere.

2.      La Cosa Nostra operated through organized crime families.   Five of these

crime families — the Bonanno, Colombo, Gambino, Genovese and Lucchese crime families —

were headquartered in New York City and supervised criminal activity in New York, in other

areas of the United States and, in some instances, in other countries.   Another crime family, the

Decavalcante crime family, operated principally in New Jersey, but from time to time also in

New York City.

3.      The ruling body of La Cosa Nostra, known as the "Commission,"

consisted of leaders from each of the crime families.   The Commission convened from time to

time to decide certain issues affecting all of the crime families, such as rules governing crime

family membership.

4.      The Gambino crime family had a hierarchy and structure.   The head of

the Gambino crime family was known as the "boss."   The Gambino crime family boss was

assisted by an "underboss" and a counselor known as a "consigliere."   Together, the boss, the

underboss and consigliere were the crime family's "administration."   With the assistance of the

underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family.

5.       Members of the Gambino crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. When this occurred, the member functioned in an "acting" capacity instead of an incarcerated or temporarily incapacitated Gambino family member who continued to hold the "official," as opposed to acting, position within the family. Further, on occasion, the Gambino crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

6.       Below the administration of the Gambino crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

7.       Only members of the Gambino crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who

3

had their "button."   Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

8.      Many requirements existed before an associate could become a member of the Gambino crime family.   The Commission of La Cosa Nostra from time to time limited the number of new members who could be added to a crime family.   An associate was also required to be proposed for membership by an existing crime family member.   When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved.   Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony.   During the ceremony, the associate, among other things, swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

Methods and Means of the Enterprise

9.      The principal purpose of the Gambino crime family was to generate money for its members and associates.   This purpose was implemented by members and associates of the Gambino crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, illegal gambling and loansharking.   The members and associates of the Gambino crime family also furthered the Enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

10.     Although the primary purpose of the Gambino crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes without the approval of higher-ranking members of the family.   For those purposes, members and associates of the Enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

11.     The members and associates of the Gambino crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.   That conduct included attempts to obstruct justice and to retaliate against those individuals perceived to be potential witnesses against members and associates of the Enterprise.

12.     Members and associates of the Gambino crime family often coordinated criminal activity with members and associates of other organized crime families, including those located in Italy.

### The Defendants

13.     The defendant JOSEPH LANNI, also known as "Joe Brooklyn" and "Mommino," was a captain in the Gambino crime family.

14.     The defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," ANGELO GRADILONE, also known as "Fifi," and JAMES LAFORTE, also known as "Jimmy," were soldiers within the Gambino crime family.

15.     The defendants ROBERT BROOKE, SALVATORE DILORENZO, KYLE JOHNSON, also known as "Twin," and VINCENT MINSQUERO, also known as "Vinny Slick," were associates of the Gambino crime family.

5

16. The defendant VITO RAPPA, also known as "Vi," was a member of the Sicilian mafia and an associate of the Gambino crime family.

17. The defendant FRANCESO VICARI, also known as "Frank" and "Uncle Ciccio," was an associate of the Sicilian mafia and an associate of the Gambino crime family.

## COUNT ONE
(Racketeering Conspiracy)

18. The allegations contained in paragraphs one through seventeen are realleged and incorporated as if fully set forth in this paragraph.

19. In or about and between January 2017 and the date of this Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH LANNI, also known as "Joe Brooklyn" and "Mommino," DIEGO TANTILLO, also known as "Danny" and "Daniel," SALVATORE DILORENZO, ANGELO GRADILONE, also known as "Fifi," KYLE JOHNSON, also known as "Twin," JAMES LAFORTE, also known as "Jimmy," VINCENT MINSQUERO, also known as "Vinny Slick," VITO RAPPA, also known as "Vi," and FRANCESCO VICARI, also known as "Frank" and "Uncle Ciccio," together with others, being persons employed by and associated with the Gambino crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

20. The pattern of racketeering activity through which the defendants JOSEPH LANNI, DIEGO TANTILLO, SALVATORE DILORENZO, ANGELO GRADILONE, KYLE JOHNSON, JAMES LAFORTE, VINCENT MINSQUERO, VITO

RAPPA and FRANCESCO VICARI, together with others, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise consisted of (a) multiple acts indictable under Title 18, United States Code, Sections 664 (relating to embezzlement from pension and welfare funds), 1343 (relating to wire fraud), 1513 (relating to retaliating against a witness, victim or an informant), 1951(a) (relating to interference with commerce by robbery or extortion), 1955 (relating to the prohibition of illegal gambling businesses) and 1956 (relating to the laundering of monetary instruments); (b) multiple acts involving extortion, in violation of New York Penal Law Sections 155.30(6), 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(iii), 155.05(2)(e)(ix) and 105.10(1); and (c) multiple acts involving arson, in violation of New York Penal Law Sections 150.10, 150.15 and 150.00(1).   It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT TWO
(Hobbs Act Extortion Conspiracy — John Doe 1)

21.   In or about and between 2017 and March 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," KYLE JOHNSON, also known as "Twin," VITO RAPPA, also known as "Vi," and FRANCESCO VICARI, also known as "Frank" and "Uncle Ciccio," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from John Doe 1, an individual whose identity is known to the Grand Jury, with the

consent of John Doe 1, which consent was to be induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT THREE
(Hobbs Act Extortion – John Doe 1)

22.     In or about and between 2017 and March 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," KYLE JOHNSON, also known as "Twin," VITO RAPPA, also known as "Vi," and FRANCESCO VICARI, also known as "Frank" and "Uncle Ciccio," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money, from John Doe 1, with the consent of John Doe 1, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT FOUR
(Hobbs Act Extortion Conspiracy – Demolition Company 1, John Doe 2,
John Doe 3 and John Doe 4)

23.     In or about and between January 2019 and February 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," and KYLE JOHNSON, also known as "Twin," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: money and reduced rates for dumping debris and scrap metals at a transload facility operated by the

8

owners of Demolition Company 1, the identity of which is known to the Grand Jury, and its

officers, agents and representatives, including John Doe 2, John Doe 3 and John Doe 4,

individuals whose identities are known to the Grand Jury, with the consent of Demolition

Company 1's officers, agents and representatives, including John Doe 2, John Doe 3 and John

Doe 4, which consent was to be induced by wrongful use of actual and threatened force, violence

and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT FIVE
(Hobbs Act Extortion – Demolition Company 1, John Doe 2,
John Doe 3 and John Doe 4)

24.     In or about and between January 2019 and February 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," and KYLE JOHNSON,

also known as "Twin," together with others, did knowingly and intentionally obstruct, delay and

affect commerce, and the movement of articles and commodities in commerce, by extortion, in

that the defendants and others obtained property, to wit: money and reduced rates for dumping

debris and scrap metals at a transload facility operated by the owners of Demolition Company 1,

with the consent of Demolition Company 1's officers, agents and representatives, including John

Doe 2, John Doe 3 and John Doe 4, which consent was induced by wrongful use of actual and

threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

COUNT SIX
(Theft from Employee Benefit Plan)

25.     In or about and between January 2019 and February 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

9

defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," and ANGELO

GRADILONE, also known as "Fifi," together with others, did knowingly and willfully

embezzle, steal and unlawfully abstract and convert to their own use and the use of one or more

others monies, funds, credits, property and other assets of one or more employee pension and

welfare benefit plans subject to Title I of ERISA, to wit: health care benefits and other benefits.

(Title 18, United States Code, Sections 664, 2 and 3551 et seq.)

## COUNT SEVEN
(Hobbs Act Extortion Conspiracy – Demolition Company 1, John Doe 2,
John Doe 3 and John Doe 4)

26.     In or about and between November 2019 and January 2020, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," and ROBERT

BROOKE, together with others, did knowingly and intentionally conspire to obstruct, delay and

affect commerce, and the movement of articles and commodities in commerce, by extortion, in

that the defendants and others agreed to obtain property, to wit: money, from Demolition

Company 1 and its officers, agents and representatives, including John Doe 2, John Doe 3 and

John Doe 4, with the consent of Demolition Company 1's officers, agents and representatives,

including John Doe 2, John Doe 3 and John Doe 4, which consent was to be induced by wrongful

use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT EIGHT
(Hobbs Act Extortion – Demolition Company 1, John Doe 2,
John Doe 3 and John Doe 4)

27.     In or about and between November 2019 and January 2020, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," and ROBERT

BROOKE, together with others, did knowingly and intentionally obstruct, delay and affect

commerce, and the movement of articles and commodities in commerce, by extortion, in that the

defendants and others obtained property, to wit: money, from Demolition Company 1 and its

officers, agents and representatives, including John Doe 2, John Doe 3 and John Doe 4, with the

consent of Demolition Company 1's officers, agents and representatives, including John Doe 2,

John Doe 3 and John Doe 4, which consent was induced by wrongful use of actual and

threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT NINE
(Embezzlement from Employee Benefit Plans)

28.     In or about and between March 2020 and April 2020, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

DIEGO TANTILLO, also known as "Danny" and "Daniel," together with others, did knowingly

and willfully embezzle, steal and unlawfully abstract and convert to his own use and the use of

one or more others monies, funds, credits, property and other assets of one or more employee

pension and welfare benefit plans subject to Title I of ERISA, including unpaid monetary

contributions contractually vested in such plans and their right to collect monies and funds

contractually owed to employee benefit plans established and maintained by Laborers Local

Union No. 3 and the New Jersey Building Construction Laborers District Council.

(Title 18, United States Code, Sections 664, 2 and 3551 et seq.)

COUNT TEN
(Hobbs Act Extortion Conspiracy – John Doe 5)

29.     In or about and between November 2020 and March 2021, both dates
being approximate and inclusive, within the Eastern District of New York and elsewhere, the
defendant JAMES LAFORTE, also known as "Jimmy," together with others, did knowingly and
intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and
commodities in commerce, by extortion, in that the defendant and others agreed to obtain
property, to wit: money, from John Doe 5, an individual whose identity is known to the Grand
Jury, which consent was to be induced by wrongful use of actual and threatened force, violence
and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT ELEVEN
(Hobbs Act Extortion – John Doe 5)

30.     In or about and between November 2020 and February 2021, both dates
being approximate and inclusive, within the Eastern District of New York and elsewhere, the
defendant JAMES LAFORTE, also known as "Jimmy," together with others, did knowingly and
intentionally obstruct, delay and affect commerce, and the movement of articles and
commodities in commerce, by extortion, in that the defendant and others obtained property, to
wit: money, from John Doe 5, with his consent, which consent was induced by wrongful use of
actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

COUNT TWELVE
(Wire Fraud Conspiracy)

31.     In or about and between November 2020 and April 2021, both dates being
approximate and inclusive, within the Eastern District of New York and elsewhere, the

12

defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," and SALVATORE

DILORENZO, together with others, did knowingly and intentionally conspire to devise a scheme

and artifice to defraud one or more companies that solicited bids for demolition projects in New

York City, and to obtain money and property from those companies by means of materially false

and fraudulent pretenses, representations and promises, and for the purpose of executing such

scheme and artifice, to transmit and cause to be transmitted by means of wire communication in

interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title

18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT THIRTEEN
(Theft from Employee Benefit Plan)

32.     In or about and between December 2020 and February 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," SALVATORE

DILORENZO and VITO RAPPA, also known as "Vi," together with others, did knowingly and

willfully embezzle, steal and unlawfully abstract and convert to their own use and the use of one

or more others monies, funds, credits, property and other assets of one or more employee pension

and welfare benefit plans subject to Title I of ERISA, to wit: health care benefits and other

benefits.

(Title 18, United States Code, Sections 664, 2 and 3551 et seq.)

## COUNT FOURTEEN
(Conspiracy to Commit Theft from Employee Benefit Plans)

33.     In or about and between September 2020 and March 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants DIEGO TANTILLO, also known as "Danny" and "Daniel," and KYLE JOHNSON, also known as "Twin," together with others, did knowingly and intentionally conspire to embezzle, steal and unlawfully and willfully abstract and convert to their own use and the use of one or more others monies, funds, credits, property and other assets of one or more employee pension and welfare benefit plans subject to Title I of ERISA, to wit: employee health care benefits and employee benefit plan payments, contrary to Title 18, United States Code, Section 664.

34.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants committed and caused to be committed, among others, the following:

### OVERT ACTS

(a)     In or about December 2020, TANTILLO asked an individual whose identity is known to the Grand Jury ("Individual 1"), who had connections to Laborers' International Union of North America Local 79 ("Local 79"), to assist TANTILLO and JOHNSON with obtaining JOHNSON's admission to Local 79.

(b)     On or about December 21, 2020, JOHNSON provided false information relating to his previous employment to TANTILLO, which information JOHNSON and TANTILLO knew to be false.

(c)     On or about December 21, 2020, TANTILLO called Individual 1 and provided Individual 1 with the false information relating to JOHNSON's previous employment, which information Individual 1 required in order to help obtain JOHNSON's admission to Local 79.

14

(d)    On or about December 28, 2020, TANTILLO sent documentation containing false information relating to JOHNSON's previous employment to Individual 1, which documentation Individual 1 provided to Local 79.

(e)    On or about January 6, 2021, TANTILLO directed Individual 1 to shift hours for work JOHNSON purportedly performed for a non-union company operated by TANTILLO to a union company operated by TANTILLO and others.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT FIFTEEN
(Witness Retaliation)

35.    On or about February 17, 2021, within the Eastern District of New York and elsewhere, the defendants JAMES LAFORTE, also known as "Jimmy," and VINCENT MINSQUERO, also known as "Vinny Slick," together with others, did knowingly and intentionally engage in conduct and thereby cause bodily injury to another person, to wit: John Doe 6, an individual whose identity is known to the Grand Jury, with intent to retaliate against John Doe 6 for (a) the attendance of John Doe 6 as a witness at an official proceeding; and (b) information relating to the commission and possible commission of a Federal offense given by John Doe 6 to one or more law enforcement officers.

(Title 18, United States Code, Sections 1513(b)(1), 1513(b)(2), 2 and 3551 et seq.)

COUNT SIXTEEN
(Felon in Possession of a Firearm)

36.    In or about May 2023, within the Southern District of New York, the defendant JAMES LAFORTE, also known as "Jimmy," knowing that he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one

15

year, did knowingly and intentionally possess in and affecting commerce a firearm, to wit: a

Smith and Wesson .38 Special caliber revolver.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE

37.     The United States hereby gives notice to the defendants charged in Count

One that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 1963(a), which requires any person

convicted of such offense to forfeit: (a) any interest the person acquired or maintained in

violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claim

against, or property or contractual right of any kind affording a source of influence over, any

enterprise which the person has established, operated, controlled, conducted or participated in the

conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property

constituting, or derived from, any proceeds which the person obtained, directly or indirectly,

from racketeering activity, in violation of Title 18, United States Code, Section 1962.

38.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be divided

without difficulty;

16

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TWO THROUGH FIVE,
## SEVEN, EIGHT, TEN AND ELEVEN

39.     The United States hereby gives notice to the defendants charged in Counts Two through Five, Seven, Eight, Ten and Eleven, that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any violation of any criminal law of the United States.

40.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

17

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
<u>AS TO COUNTS SIX, NINE AND TWELVE THROUGH FOURTEEN</u>

41.     The United States hereby gives notice to the defendants charged in Counts Six, Nine and Twelve through Fourteen that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

42.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT FIFTEEN

43.    The United States hereby gives notice to the defendants charged in Count

Fifteen that, upon their conviction of such offense, the government will seek forfeiture in

accordance with (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c), which require any person convicted of such offense to forfeit any

property constituting, or derived from, proceeds obtained directly or indirectly as a result of such

offense; and (b) Title 18, United States Code, Section 1955(d), which provides for the forfeiture

of any property, including money, used in violation of Title 18, United States Code, Section

1955.

44.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT SIXTEEN

45.     The United States hereby gives notice to the defendant charged in Count Sixteen that, upon his conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Section 922, including but not limited to a Smith and Wesson .38 Special caliber revolver.

46.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        (a)      cannot be located upon the exercise of due diligence;

        (b)      has been transferred or sold to, or deposited with, a third party;

        (c)      has been placed beyond the jurisdiction of the court;

        (d)      has been substantially diminished in value; or

        (e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property

described in this forfeiture allegation.

        (Title 18, United States Code, Section 924(d)(1); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

21

F.#: 2020R00939
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

JOSEPH LANNI, also known as "Joe Brooklyn" and "Mommino," DIEGO TANTILLO, also known as "Danny" and "Daniel," ROBERT BROOKE, SALVATORE DILORENZO, ANGELO GRADILONE, also known as "Fifi," KYLE JOHNSON, also known as "Twin," JAMES LAFORTE, also known as "Jimmy," VINCENT MINSQUERO also known as "Vinny Slick," VITO RAPPA, also known as "Vi," and FRANCESCO VICARI, also known as "Frank" and "Uncle Ciccio,"

Defendants.

## INDICTMENT

(T. 18, U.S.C. §§ 371, 664, 922(g)(1), 924(a)(2), 924(d)(1), 981(a)(1)(C), 1349, 1513(b)(1), 1513(b)(2), 1513, 1951(a), 1955(d), 1962(d), 1963(a), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C. § 2461(c))

*A true bill.*

_____                          _____
                                                                                          *Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*
*of* _ _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_____
                                                                                                              *Clerk*

*Bail, $*_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Matthew R. Galeotti, Anna L. Karamigios, Andrew M. Roddin*
*Assistant U.S. Attorneys (718) 254-7000*