UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 23-cr-00443-FB
                               :
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
JOSEPH LANNI, et al.,          :
                               : November 30, 2023
              Defendants       : 2:20 p.m.
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION
BEFORE THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE


A  P  P  E  A  R  A  N  C  E  S:


<u>**For the Government**</u>:        **Breon S. Peace, Esq.**
                          United States Attorney

                     BY:  **Matthew R. Galeotti, Esq.**
                          **Andrew M. Roddin, Esq.**
                          Assistant U.S. Attorneys
                          271-A Cadman Plaza East
                          Brooklyn, New York 11201


<u>**For Def. Lanni**</u>:           **Frederick L. Sosinsky, Esq.**
                          45 Broadway, Suite 3010
                          New York, NY 10006

                          **Michael K. Bachrach, Esq.**
                          224 West 30th Street, Suite 302
                          New York, NY 10001


<u>**Transcription Service**</u>:    **Transcriptions Plus II, Inc.**
                          61 Beatrice Avenue
                          West Islip, New York 11795
                          RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  So we have a criminal cause for a

2    bail application.  It is 23-cr-443, *United States v.*

3    *Joseph Lanni.*

4          Counsel, state your appearances, please,

5    starting with the government.

6          MR. GALEOTTI:  Good afternoon, your Honor.  For

7    the government, Assistant United States Attorneys Matthew

8    Galeotti and Andrew Roddin.

9          THE COURT:  Good afternoon.

10         MR. SOSINSKY:  Appearing for Joseph Lanni, Fred

11   Sosinsky.  Good to see you, Judge.

12         MR. BACHRACH:  Good afternoon, your Honor.

13   Also appearing for Joseph Lanni, Michael Bachrach.

14         THE COURT:  All right.  Good afternoon.  So I

15   think we're here for a bail application or is that --

16   they've been arraigned and --

17         THE CLERK:  Yes.

18         MR. SOSINSKY:  That's correct, your Honor.

19         THE COURT:  Okay.  So I guess then it's your

20   application.

21         MR. SOSINSKY:  It is --

22         THE COURT:  Oh, first let me just make sure.

23         Mr. Lanni, I take it that you do understand

24   English, correct?

25         DEFENDANT LANNI:  Yes.  Yes, your Honor.

3

Proceedings

1     THE COURT:  Okay.  If at any point something is
2  said that you don't understand, please let me know right
3  away.
4     MR. LANNI:  All right.  Thank you.
5     THE COURT:  All right.  Go ahead, Counsel.
6     MR. SOSINSKY:  And I can remain seated, Judge?
7     THE COURT:  Yes, you can.
8     MR. SOSINSKY:  Okay.  Thank you.  Your Honor,
9  as of last week, there have been six of Mr. Lanni's
10  co-defendants for whom the government has sought
11  detention at contested hearings, and all six have been
12  granted release on varying types of bonds, some of them
13  more significant in terms of their amount and the level
14  of restriction.  But the government has failed in each
15  case to satisfy, at the time, a magistrate judge, and
16  then Judge Block last week at a hearing that I attended.
17  And I attached to our application the transcript from
18  Judge Block's appeal of the magistrate -- then magistrate
19  judge's, I should say, decision, Judge Reyes, with regard
20  to the government's applications.
21     So -- and Judge Block, interestingly, began
22  last week's proceedings against Defendants Tantillo and
23  Gradilone by asking the government, I think, a very
24  telling question.  And that is, he said, "I've read
25  through most of the stuff here.  What separates these two

4

Proceedings

1  gentlemen at defense counsel table from the ones who were

2  granted release already?"

3         And as I hope your Honor has seen while reading

4  through the transcript, although at least one of them

5  last week was charged substantively with a series of

6  violent extortions, including all sorts of beatings with

7  hammers and fists and continuing threats that the

8  government claimed continued until recently, the judge

9  saw no distinction under the law in terms of whether or

10  not, given the presumption of bail that existed in those

11  cases, and indeed exists here, and I think even more

12  strongly, to detain them, especially given the packages

13  that were being proposed and that the logistics of which

14  were worked out that same afternoon, they were released

15  the following morning when some of the suretors came in,

16  and others were given time to sign and to file liens

17  against property and so on.

18         If anything, if anything, your Honor, the

19  situation we have here with regard to my client, Joe

20  Lanni, cries out even more strongly for release on a

21  restrictive bond similar to that which Judge Block

22  imposed last week, and similar to that which Judge Block

23  imposed on another case with similar allegations, *United*

24  *States v. Campos*, that Judge Block actually referenced

25  both in the discussion, and I believe in his order, and

5

Proceedings

1   asked both sides really to fashion the conditions of

2   release that would be imposed in magistrate's court

3   following his order on his decision in *Campos*.

4           And that's what we've proposed here, Judge, the

5   same type of restrictive conditions, the same type of

6   restrictive conditions that Judge Block well knows

7   from -- God bless you -- from his years of experience,

8   okay, would essentially, essentially eliminate, if not

9   all, almost all of the concerns -- of the concerns that

10  the government presses on in that case and in this case.

11          So Judge Block, noting through experience that

12  if pretrial services was given access to phones; if the

13  person can't leave their house without permission; if the

14  person can't have visitors that are on a list of people,

15  bad people that the government says they shouldn't be in

16  contact with; if the person's only allowed to visit their

17  attorneys and their doctor's offices, unless there's

18  extraordinary circumstance and the Court grants

19  permission otherwise; if, as I said, if there's

20  monitoring, if they're being electronically monitored;

21  and if they are offering properties, collateral from

22  family members, from others, that would cause tremendous

23  pain and sacrifice, if not homelessness, upon those who

24  are willing to put up their properties and sign off on

25  the bond and have the government come after them if there

6

Proceedings

1   was any amount owed after they foreclosed on properties
2   pledged, all of those are reasons why historically, as
3   Judge Block noted, and in those cases, he was well
4   satisfied that almost all of those concerns could be
5   sufficiently mitigated or ameliorated by the imposition
6   of those type of conditions, and he talked a lot about
7   that.
8           My client is 52 years old.  Until -- Judge,
9   until September of this year, he'd never been accused --
10  forget about convicted; he's not been -- but he's never
11  been accused of a violent act in his life.  And in a case
12  like this, I dare say that's remarkable.
13          Most of the people who come before this Court
14  and come before Judge Block, in cases where the
15  government claims that they are who they are, cannot say
16  that.  He can.  I've represented him on at least one of
17  his cases in the past that had nothing to do with
18  violence, threats, and so on.
19          His family is here, Judge, his children, all of
20  whom were raised and schooled and continue to be here in
21  the city of New York.  He's made his home in Brooklyn
22  and/or Staten Island.  He's worked his entire life in
23  Brooklyn and Staten Island here in the Eastern District.
24          He's never been accused, convicted of utilizing
25  guns, firearms.  He's never been convicted.

7

                              Proceedings

1           THE COURT:  Let me just respectfully --

2           MR. SOSINSKY:  Yeah.

3           THE COURT:  -- stop you for a second before we

4    get too far along here.  I have a pretrial services

5    report.  Maybe I have the wrong one.

6           MR. SOSINSKY:  I'm sure you have the right one.

7           THE COURT:  But it says on page 5 that as of

8    September 28th of this year in Ocean County, New Jersey,

9    he was charged, among other things, simple assault,

10   terroristic threats, (indiscernible), possession of a

11   weapon.

12          MR. GALEOTTI:  Yes.

13          THE COURT:  And so I realize it looks as though

14   those charges appear to be pending --

15          MR. GALEOTTI:  They are.  I'm representing him.

16          THE COURT:  But to suggest that there's no

17   history at all of allegations of violence --

18          MR. GALEOTTI:  I didn't say that.  What I said

19   is until September of this year -- I did.  I was very

20   careful to say that for that reason, Judge.  I know that

21   because I'm representing him in connection with that

22   case.

23          My point was, my point was -- and that case has

24   nothing to do with the case the government is bringing

25   here.

8

Proceedings

1        THE COURT:  No.  It doesn't have to.  I was

2   just --

3        MR. SOSINSKY:  Yes.

4        THE COURT:  I guess I didn't catch the "until

5   September," so --

6        MR. SOSINSKY:  Well, I did --

7        THE COURT:  That's all right.

8        MR. SOSINSKY:  I did, and I said, you know, 52

9   years.

10        THE COURT:  I'm sure you did.  I didn't catch

11   it.  I was focused on trying to find where I thought I

12   had seen something relating to a gun.

13        MR. GALEOTTI:  That's his PSR.  There's no

14   doubt about it, and those are the charges pending.

15        By the way, Judge, to the extent it's important

16   to you, he was released on essentially no conditions in

17   that case down there.  He was compliant with those

18   conditions, and of course -- and he was arrested here at

19   the beginning of November.

20        We've been in touch with the equivalent of

21   probation or pre-trial down there.  And if he's released

22   on bond, as we're requesting, they are requesting simply

23   the same thing, a heightened level of contact with him.

24        To the extent that that's important for the

25   Court to know, that's their current position, given their

9

Proceedings

1    understanding that he was arrested on this case.  And as

2    you can see, as you can see substantively in the

3    government's memorandum, that's the most recent act or

4    accusation against him since he's not named in any other

5    count in the indictment.  He's not named in any so-called

6    predicate act.  He's not named in substantive crimes in

7    the indictment.

8            So yes, that exists, Judge.  That's the first

9    time, as I said, in 52 years that there's ever been such

10   an accusation brought against him.  And he intends to

11   fight those charges along with counsel.

12           The cases that he's had, Judge, if anything,

13   and I hope your Honor went through our memorandum,

14   outlined the fact that when he's had court cases,

15   non-violent accusations against him, he's come back to

16   court each and every time.  He has hired counsel.  He has

17   met with counsel in their offices.  I know the case that

18   I represented him on some years back, there was probably

19   a dozen appearances in court.

20           I don't know how anyone can prove to a court

21   that they will return to court -- and this is if we get

22   into a discussion of whether there's a real risk of

23   flight, which I want to address in a moment -- other than

24   by, sure, it's better never to have been arrested.  I'd

25   much rather stand before a court and say that that's the

10

Proceedings

1   best indication.  But when someone has had court cases,

2   and they've attended to them, and they've been on

3   probation and supervised release following release from

4   facilities, and there's no violations, and they've

5   fulfilled their obligations there, that's a pretty good

6   indication, isn't it, that the Court should not be

7   concerned about whether or not they will return to court.

8          Which gets me to the next point, Judge.  And

9   that is, under the law, we really shouldn't be -- I

10  shouldn't be talking about, and maybe I'm presuming too

11  much, fighting off the notion of detention in this case,

12  as opposed to conditions of release.  And why is that?

13  Because, as we've argued at length, at length, in our

14  submission to the Court, in order for the government to

15  request detention in the first place, there has to be a

16  legal basis outlined in the statute, right, to be seeking

17  detention.  Is there a crime of violence in this case?

18         The government says yes, but they ignore a

19  whole body of law that's developed since the time of the

20  one case that they point to in the Second Circuit, what,

21  20, 21 years ago, I believe, that has changed

22  dramatically the definition of a crime of violence.  They

23  ignore that.

24         They say that this *Watkins* case somehow doesn't

25  stand for the proposition that you have to follow Supreme

11

Proceedings

1   Court precedent and use a categorical approach in

2   analyzing whether or not a crime is a crime of violence

3   under the law.  It doesn't say that at all.  It says

4   exactly what I just said.  It says exactly what I just

5   said.

6           So, to the extent that the Court is considering

7   to apply -- whether a RICO conspiracy is a crime of

8   violence, an issue that the Second Circuit has spoken

9   on -- I don't know how many times, but in papers, in

10  papers, the Court reminds the parties that in unpublished

11  decisions, it had been rendering decisions for years

12  saying that a RICO conspiracy was no longer a crime of

13  violence after the Supreme Court in *Davis* and cases that

14  came before it, *Johnson*, had ruled that way.

15          So, whether you use the strict categorical

16  approach or you use the approach I think that the

17  government urges of looking at a crime of violence under

18  the residual clause which may still be alive and looks at

19  it as the ordinary RICO conspiracy case, in papers, the

20  Second Circuit made clear, made clear, that a RICO

21  conspiracy is no longer a crime of violence.

22          And if a RICO conspiracy, like they said, like

23  a conspiracy to commit murder -- murder, the worst of all

24  crimes, the most serious of all crimes, Hobbs Act robbery

25  conspiracies are no longer crimes of violence, it cannot

Proceedings

1  possibly be that the government is relying on a RICO

2  conspiracy to seek the detention of my client.  The law

3  doesn't support that.

4          So there's two other grounds upon which they

5  can move.  The burden is on them for detention here.  A

6  significant, a serious risk of flight.  And I just

7  outlined, I think, for the Court why there shouldn't be

8  an unserious thought about him taking off anywhere,

9  Judge.  It has to be a serious risk of flight presented

10 by the government in order to utilize that second

11 potential hook for a detention hearing, not to get

12 detention, but to even get to the point where they can

13 argue for detention.

14         Judge Block last week, in listening to the

15 government's proffers in that regard, made very clear --

16 we cite Judge Block's analysis of the situation,

17 something he has expressed before, there's no risk of

18 flight in these cases.  That's not what we're talking

19 about.  And mind you, at least one of the individuals

20 before Judge Block last week, one of his co-defendants,

21 was unquestionably charged with a crime of violence,

22 extortion, violent extortion, which he's not.  So that's

23 why we're talking about it to begin with.

24         But Judge Block made very clear, in these cases

25 where people, you know, have track records of appearing

Proceedings

1    in court and have not taken off -- forget about the

2    historical statistics we offered up showing that

3    99 percent of people in federal court return, and 98

4    don't violate the conditions.  But Judge Block well knows

5    that wasn't the issue.  And the government pressed on for

6    a bit.  And he told them, listen, that's not the issue

7    here.  Flight is not the issue.

8            So if flight is not the issue, and I hope your

9    Honor agrees that flight is not the issue, and it's

10   certainly not a significant issue here, that leaves one

11   other hook for the government, and they don't have that

12   either, as we've outlined in our papers.

13           In order to get to a detention hearing, as

14   opposed to talking about whether or not the conditions

15   that are being offered, a combination of conditions,

16   sufficiently can protect against concerns of flight,

17   concerns of dangerousness, and obstruction, they have to

18   make a showing before you that he poses a real risk of

19   obstruction of justice, of threatening witnesses, of

20   threatening victims.  And they've made no such showing.

21           The only thing that they can point to -- I

22   guess there are two things.  One we include in a

23   footnote, which was while he was out at a restaurant

24   having dinner with some people, two other people who he

25   was with got up and confronted someone else and did

14

Proceedings

1    something.  There's no mention made of him knowing in

2    advance, participating, directing, requesting, laughing.

3             They have no idea, they make no showing to you

4    about his involvement, and yet I guarantee you're about

5    to hear about it as one basis upon which the Court should

6    consider that as obstructive conduct.  He's not charged

7    with it, as are others.  They have no evidence that he

8    was involved, other than wild speculation that that

9    couldn't happen unless, you know, he said it was okay.

10            The second thing is the New Jersey matter,

11   which, Judge, I did -- maybe I didn't speak loud enough,

12   but I did make mention of, as of September, the first

13   time Joe Lanni, at age 52, married with children, has

14   ever been accused of an act of violence in his life.  And

15   as I say, I represent him on that case.  He's fighting

16   that case.

17            But, Judge, if you go through that, there was

18   him and another person drinking inside of an

19   establishment in a bar down there for hours on end.  They

20   had drinks.  They had purchased other patrons of the bar

21   drinks.  They were having a perfectly pleasant time.

22            And then at some point, regardless of who was

23   at fault, there's an argument that ensues, and the owners

24   decide that he and his friend are the ones who are going

25   to have to leave.

15

Proceedings

1          Both of them felt it was terribly unfair for

2    that to happen.  They didn't do anything.  They were

3    spending money there.  They're not -- no one claimed that

4    anything got physical at that point.  And so, however it

5    happened, the owners decide, you have to leave.

6          And he becomes upset, as does the guy he was

7    with at the time.  And then, so the police are called,

8    and the police are there, and they take both of their

9    IDs.  This car's sitting in the parking lot where he'd

10   been since that afternoon.  And the police notice that

11   there's alcohol on the breath.  You shouldn't be driving.

12   They -- leave your car here.  Leave your car here, you'll

13   come back and get it.  You'll get a ride, an Uber, come

14   back tomorrow and pick it up.

15          And he's complaining, he's -- there's yelling

16   back and forth about why us?  How dare you?  We were

17   here, we weren't -- and the claim is that the other guy

18   damaged, I don't know, a painting or something off of the

19   wall.

20          If true, none of this is a great way to spend a

21   Friday afternoon on Labor Day weekend, Judge.  It has

22   nothing to do with this case.  Okay?  And it certainly,

23   certainly should not be a basis for this Court to not

24   agree with the defense that there are conditions, very

25   reasonable and restrictive conditions, okay, that should

16

Proceedings

1   put the Court at ease that he will not violate a release

2   order on an appearance bond here.  Has nothing to do with

3   this case other than it's the same person and accusations

4   are flying.

5            The government doesn't accuse him of assaulting

6   them later.  And even if they did, that's not -- that is

7   not a significant risk of obstruction.  That's not

8   obstruction of a case.  There's no evidence that after

9   the police were involved that there were threats made to

10  these people not to cooperate, not to continue to speak

11  to the police.

12           The police were there when they claimed he ran

13  across the street and was seen on a video with a gasoline

14  can in his hand.  The police are at the place -- the

15  police are at the place when they say he's calling up

16  afterwards, demanding an apology from them for kicking

17  him or them out instead of the other people.

18           The police were there.  They say there was a

19  police wearing body cam who takes the phone away from one

20  of the patrons and tries to announce, listen, I'm a

21  police officer, I'm still here.  That's not obstruction.

22  They have no evidence of any such thing or threatening

23  someone who's expected to testify.

24           That's what the statute gets at.  We offered up

25  at least one case, perhaps cases, where courts have found

17

Proceedings

1  obstruction to exist as it relates to the bail statute, a

2  far cry from what we have here, Judge.

3          So, in order for this Court to even consider

4  detention as opposed to strict conditions, the government

5  has to satisfy you by clearly convincing evidence that

6  one of those hooks exists.  I believe it's a fair

7  preponderance of the evidence that --

8          THE COURT:  Why don't you give me what you're

9  proposing as a bail package.

10         MR. SOSINSKY:  Yeah.  Okay, Judge.

11         THE COURT:  We have a very crowded afternoon

12  and --

13         MR. SOSINSKY:  Okay.

14         THE COURT:  -- I appreciate -- that's what the

15  argument is seeking so far, and I want to hear what your

16  bail package says.

17         MR. SOSINSKY:  Okay.  So, Judge, as we've

18  outlined in our submission, the bail package is two homes

19  that collectively are worth and appraised at north of

20  $3 million, okay?  Probably 3.1, 3.2 million dollars.

21  One of whom -- one of the homes, I should say, has been

22  in the family for a long time.  It is the home where his

23  eighty -- I think five -- year-old mother, who's here in

24  court, lives, and his brother Louis live.  Louis is the

25  owner, mom lives in that home.

Proceedings

1          That home in Brooklyn is -- it is assessed by

2     the City -- I'm sure your Honor knows you don't get

3     assessed at the real value, it's always under.  But it's

4     assessed literally within dollars of $2 million itself.

5     And another home in New Jersey, which we've had appraised

6     and is worth close to $2 million, okay?  So those are the

7     two properties that we think --

8          THE COURT:  And who owns the New Jersey

9     property?

10          MR. SOSINSKY:  Mr. Lanni owns the New Jersey

11     property.

12          THE COURT:  And there's no mortgage on any of

13     these?

14          MR. SOSINSKY:  Correct.  No, excuse me.  There

15     is on the Brooklyn home.  There's a mortgage of about

16     $360,000, $370,000.  Okay?  On the New Jersey property,

17     there is none on that property.

18          THE COURT:  Okay.

19          MR. SOSINSKY:  In addition, Judge, so we would

20     have his brother, Louis, who is here in court today; his

21     mother, who is not well, but is here in court today; we

22     would have them sign the bond, and we would take care of

23     posting within a couple of days of liens in full against

24     both properties.

25          And we would ask for two other financially

19

Proceedings

1   responsible people that are -- I don't believe any are in

2   court, we can have them here within a couple of hours.

3   And if the Court was ready to issue an order, we could

4   set a time tomorrow, when I know both could be here in

5   the afternoon, maybe even in the morning.  But I don't

6   know of any reason why, if he's on electronic monitoring

7   and on home incarceration or detention, that should pose

8   an issue.

9        I know the Court, perhaps not your Honor, has

10  released other defendants.  I've given them a few days

11  into the following week to get the last of the suretors

12  to sign off on the bond.  But the other suretors are

13  working people.  Joseph's brother, who is the owner of

14  the home, is a working person.  They made, in the past,

15  significant, you know, income.  All of them are perfectly

16  qualified people to sign off on a bond.

17       And so, with the conditions that I began by

18  speaking about, that are also in our memo, the same ones

19  essentially that were imposed last week on Defendant

20  Tantillo, the most restrictive ones, I think, you know,

21  imaginable, that's what we're asking for.

22       THE COURT:  Just to clarify something from the

23  pretrial services report before I hear from the

24  government, the report says that the defendant purchased

25  property located at 7 Upton Street, Staten Island, and

20

Proceedings

1    that that property has a lien of 1.6 million.

2              And then there are two other properties

3    identified by pretrial, Bay Stream Drive and

4    (indiscernible) Drive in Toms River.  But those,

5    according to the report, are from a trust.  So I'm a

6    little confused as to the properties that you are

7    attempting --

8              MR. SOSINSKY:  Yes.  So, not the Staten Island

9    property, not -- I don't think I mentioned that.  And the

10   Toms River property that I've been talking about is the

11   Bay Stream Drive property.  Mr. Lanni, I believe,

12   revealed that, revealed, you know, his ownership in

13   whatever form to pretrial services there.  I've spoken

14   with the --

15             THE COURT:  But if it's in a trust, then I'm

16   wondering if it can be posted as --

17             MR. SOSINSKY:  I know that it can.  I've been

18   in touch with the real estate attorney who will take care

19   of this and provide the government, the Court, with proof

20   that the lien has been filed against it.

21             Obviously, if that doesn't go on and it doesn't

22   go on in the time frame that your Honor would order, and

23   I have no doubt that it could be done, you know, we would

24   come back before the Court --

25             THE COURT:  Yeah.  Well, my concern is not

Proceedings

1  whether a lien can be posted against it, but in terms of

2  a trust, I kind of need to know who's the beneficiary of

3  the trust, who's the trustee.  Does Mr. Lanni have the

4  authority to post this property on his own behalf?

5  That's, I guess, my question.

6          MR. SOSINSKY:  Sure.  With regard to the

7  Brooklyn property, I think that's not an issue.

8          THE COURT:  No, no, no.  I'm talking about the

9  Bay Stream property.

10          MR. SOSINSKY:  Yes.

11          THE COURT:  The other property, my

12  understanding is, he doesn't have any relationship to.

13  It's his mother and his brother.

14          MR. SOSINSKY:  Well, he used to live there, but

15  yes.  Yes --

16          THE COURT:  But I mean upon the deed, legally

17  speaking.

18          MR. SOSINSKY:  Yes.  100 percent, Judge.  As to

19  the Bay Stream property, again, I don't claim to be a

20  real estate expert, but I have spoken with someone who

21  does that for a living and told me that Mr. Lanni would

22  have to sign as the trustee on that property.  And I

23  forget whether or not the beneficiaries of the trust

24  would also have to sign.  However it is, and I think it's

25  just the former, that's what would be done.

Proceedings

1       THE COURT:  Well, having been a trustee of

2  property for my mother-in-law --

3       MR. SOSINSKY:  Yes.

4       THE COURT:  -- I did not have the ability to

5  transfer that property or post it -- put a lien on it,

6  you know, because it was for her benefit.  So that's why

7  I'm making the (indiscernible) here.  But I think before

8  I can accept that, I would need for you to present the

9  trust documents and let's figure out exactly who would be

10  responsible and authorized to post this property.

11       MR. SOSINSKY:  I will -- I may be able to do

12  one better.  I will have the real estate attorney who

13  created the trust here in court to answer all queries

14  before whatever documents are required properly are

15  prepared.

16       THE COURT:  Okay.

17       MR. SOSINSKY:  I know I can do that.

18       THE COURT:  All right.  Fine.

19            (Court and clerk confer)

20       THE COURT:  So let me hear from the government.

21       MR. GALEOTTI:  Yes, your Honor.  First, for the

22  record, we would just note that this -- the government is

23  requesting this hearing pursuant to 18 United States Code

24  3142(f)(1)(A), because the defendant committed a crime of

25  violence, and pursuant to 18 United States Code

23

Proceedings

1    3142(f)(2)(b), given the risk of flight, and the threat

2    that the defendant will obstruct justice or tamper with

3    witnesses.

4              For reasons we're about to describe, your

5    Honor, the government maintains the position that

6    detention is appropriate pursuant to 18 United States

7    Code 3142(g), and that the order of detention put in

8    place by Judge Reyes should remain in place.

9              Your Honor, let me just start, first of all,

10   there appears to be a bit of a misconception on the law

11   here.  The defendant is charged with RICO conspiracy, a

12   Glecier-style RICO conspiracy.  He agreed to participate

13   in a pattern of racketeering that includes violent

14   objects.  Not only did he agree to participate in such

15   pattern, he himself engaged in such pattern when he

16   committed the assault in Toms River using both the power

17   and prestige of the enterprise.

18             So, certainly, the assault in Toms River has

19   something to do with this case.  We would submit evidence

20   at trial that the defendant referenced multiple times his

21   association with the Gambino crime family, as well as

22   using one of his underlings in the Gambino crime family

23   to commit an assault that happened in Toms River.

24             I should say, irrespective of whether --

25             THE COURT:  All right.  Which -- this is at the

Transcriptions Plus II, Inc.

24

Proceedings

1  restaurant?

2          MR. GALEOTTI:  At the restaurant, your Honor.

3          THE COURT:  He actually assaulted a person?

4          MR. GALEOTTI:  Your Honor, the evidence --

5  that's why he's charged in New Jersey.  The evidence

6  suggests that he was -- him and co-defendant in this

7  case, Vincent Minsquero, assaulted both the -- both

8  patrons of the bar.  That's what they're charged with.

9          There was an assault of these two patrons after

10 the episode that you just heard about.  The two bar

11 owners were assaulted at knifepoint by two men who were

12 initially identified as Mr. Lanni and the co-defendant,

13 Vincent Minsquero.

14         Your Honor, to speak to the obstruction, we'd

15 say that at first the victims reported this and reported

16 that Mr. Lanni was one of the attackers.  They then

17 conducted due diligence where they were contacted by

18 another member of the Gambino crime family and

19 subsequently dropped the charges.

20         So the incident in New Jersey, which happened

21 just months ago, speaks not only to the violence of this

22 individual but also for the ability of him to obstruct

23 and tamper with witnesses, as he's already done, and to

24 do so again in this case.  Relatedly --

25         THE COURT:  See, I'm looking at your memo, the

25

Proceedings

1   government's memo.

2           MR. GALEOTTI:  Yes, your Honor.

3           THE COURT:  And beginning on page 9, I think

4   describes this incident at the restaurant there.

5           MR. GALEOTTI:  Correct.

6           THE COURT:  That's what we're talking about.

7   And the report says there was an argument.  Mr. Minsquero

8   punched the wall.  Mr. Lanni threatened the owners,

9   saying he would burn this place down with you in it, and

10  I think -- simply quoting -- I'm not making findings that

11  any of this happened, but this is what you represented --

12  (indiscernible) discussion of (indiscernible) gas

13  container and all of that.  But I don't see anything here

14  being said --

15          MR. GALEOTTI:  We received additional evidence

16  since that time, your Honor, including body cam evidence

17  and toll records to support the proffer that we're making

18  to your Honor.  The victims reported that they were

19  assaulted at knifepoint.  There's no dispute about that.

20  That's part of the case.  And the defendant --

21          THE COURT:  And there was a positive

22  identification of Mr. Lanni?

23          MR. GALEOTTI:  I did not say there was a

24  positive identification of Mr. Lanni.  I said the victims

25  initially reported that it was Mr. Lanni.  Two

26

Proceedings

1  individuals came back immediately after the incident

2  that's pictured and -- assaulted.  And that night or

3  immediately thereafter, they identified Mr. Lanni.

4          They then dropped that identification

5  afterwards, after learning that Mr. Lanni was a member of

6  the Gambino crime family.  So we're saying that evidence

7  suggests and they've been charged with it, your Honor.

8  Certainly what we're saying is that they were then

9  subsequently contacted by a member of the Gambino crime

10  family, and then dropped the charges thereafter.

11          THE COURT:  So, even assuming that's true,

12  though, there's no proffer at this point in time that it

13  was Mr. Lanni who made the phone call threatening it,

14  correct?

15          MR. GALEOTTI:  Threatening the witnesses to

16  drop the charges?

17          THE COURT:  Yes.

18          MR. GALEOTTI:  No, we're not suggesting that,

19  your Honor.  But we are saying that it's consistent with

20  the case law that says that members, particularly

21  high-ranking members of organized crime, have the ability

22  and power to do these things; and in fact, it played

23  itself out in this situation.

24          What I can tell you is that the defendant also

25  called the victims that night 37 times, begging --

27

Proceedings

1   telling them to beg for forgiveness or to see what would

2   happen, threatening violence, your Honor.

3            So they had reason to go -- to believe when

4   another member of the Gambino crime family, when they

5   spoke with him, to believe that Mr. Lanni, in fact, had

6   the power and the capability to make them beg for

7   forgiveness.  He told them himself that they should.

8            THE COURT:  But let me go back just to the

9   defense counsel's original argument, which is that the

10  charge -- and he's only, based on your letter, charged

11  with one count, correct?  That is the racketeering

12  conspiracy.

13           MR. GALEOTTI:  Yes, your Honor.

14           THE COURT:  And there's no indication, at least

15  in your memo, that he's charged with any specific acts of

16  violence in connection with the charge that's in the

17  indictment, correct?

18           MR. GALEOTTI:  Yes, your Honor, but in a

19  Glecier RICO conspiracy, you prove up the specific

20  incidents that are part of the pattern of the

21  racketeering enterprise, which include violent

22  extortions, arsons, assaults.  So this would be --

23           THE COURT:  But what is the evidence that

24  Mr. Lanni himself engaged in these specific acts that

25  form a pattern?

Proceedings

1          MR. GALEOTTI:  Well, one is the Toms River

2    incident that we were just describing.

3          THE COURT:  Well, but that's kind of -- are you

4    suggesting that that incident in the restaurant was part

5    of the extortion?

6          MR. GALEOTTI:  No, your Honor.  Two separate

7    things.

8          THE COURT:  So these guys were just out for

9    dinner.  It has nothing to do with other criminal

10   activities charged in your indictment.  And they get into

11   a dispute.  Is that -- I mean, I understand what you're

12   saying, which is they said we're Gambino members,

13   therefore, you should be afraid we'll do bad things to

14   you.  But it's not really (indiscernible) to or connected

15   to other crimes charged in the indictment?

16         MR. GALEOTTI:  The case law is 100 percent

17   clear, your Honor, that when you're utilizing the power

18   and resources of the enterprise, that is permissible

19   racketeering evidence that comes in to show that you

20   acted in furtherance of the conspiracy.  This is one of

21   the incidents.  It's a predicate act that would be part

22   of the conspiracy.  The commission of these assaults, the

23   attempted arson --

24         THE COURT:  It's not, though, currently.

25         MR. GALEOTTI:  It is, your Honor.  It's just a

29

Proceedings

1    form of charging --

2              THE COURT:  It's in the indictment?

3              MR. GALEOTTI:  The pattern -- not every

4    incident that you would prove up as part of the

5    racketeering conspiracy --

6              THE COURT:  But this one isn't.

7              MR. GALEOTTI:  Your Honor, none of them are.

8              THE COURT:  Okay.

9              MR. GALEOTTI:  There's no specific predicate

10   listed because it's a racketeering conspiracy charge.

11             THE COURT:  Right.  But you've got a lot of

12   different charges in the indictment relating to the other

13   defendants.

14             MR. GALEOTTI:  Sure.

15             THE COURT:  I guess my concern is Judge Block

16   was already asking to explain why this defendant should

17   be treated differently from the other defendants that

18   were released.  And by my review of the report, they are

19   charged with more specific criminal activity, including

20   crimes of violence.

21             So, I guess, anticipating that if I were to

22   detain him, you'd get the same questions from Judge Block

23   as you got with respect to the other defendants.  How do

24   you respond to that?

25             MR. GALEOTTI:  Well, whether he's charged in

30

Proceedings

1  other stand-alone counts does nothing to take away from

2  the crimes that he did as part of the racketeering

3  conspiracy, for one thing.

4          THE COURT:  But presumably these other

5  defendants were also charged with the racketeering

6  conspiracy plus, and Judge Block didn't find that

7  sufficient to order them detained.  So, again, I hear

8  what you're saying about the conspiracy, but how are you

9  going to respond outstanding Judge Block if this goes up

10  on appeal?

11          MR. GALEOTTI:  Let's talk about how he's

12  distinguishable from the other people.

13          THE COURT:  Okay.

14          MR. GALEOTTI:  So, first of all, even if the

15  Toms River incident had nothing to do with this

16  conspiracy, it's a recent act of violence, which we would

17  consider in any bail appearance before your Honor on any

18  type of case.  Even if it had nothing to do with RICO or

19  nothing to do with the enterprise.  The fact is, he's a

20  violent individual that engaged in violence recently.  So

21  that matters.

22          Number two, it's the obstruction element of it

23  that is particularly important here.  It's consistent

24  with what happened at the second time at the Sei Less

25  Restaurant, where this individual, who is a captain, who

Proceedings

1    generally doesn't have to get his hands dirty, has -- is

2    sitting there while his two associates, underlings,

3    assault another rat, quote unquote "rat," who previously

4    cooperated against the Gambino crime family.

5              THE COURT:  Were those two individuals

6    detained?

7              MR. GALEOTTI:  One is in custody right now,

8    your Honor, and one is not detained.  And I should say

9    that the one who is in custody is on his way from the

10   Eastern District of Pennsylvania here, who is detained on

11   other charges.

12             So the other way to distinguish it, your Honor,

13   is Mr. Lanni is a captain in the family.  He has power,

14   he has authority to direct people to do things.  And just

15   because someone doesn't swing a hammer themselves, or

16   doesn't assault someone themselves, it makes them no less

17   culpable if they've ordered it, if they've allowed it, if

18   they've benefitted financially from it.

19             THE COURT:  I fully understand that.  I

20   authored the opinion of the *United States v. Peter Gotti*

21   many, many, many, many years ago, probably before you

22   were even born.  So I'm fully aware of that.  But

23   obviously that is not -- or has not been persuasive so

24   far to Judge Brock.

25             So, again, explain to me why in this case I

32

Proceedings

1  should, knowing where the Judge stands on this, order

2  detention.

3          MR. GALEOTTI:  Well, your Honor, I guess I

4  would submit that respectfully your Honor is making the

5  decision in the first instance, the same way Judge Reyes

6  is, and frankly deals with bail hearings every, you know,

7  every month in this court.  And putting aside whether

8  Judge Block's prior opinion, because we do think this is

9  distinguishable, but I don't think that it's necessarily

10  the right way to go about it to read the tea leaves of

11  Judge Block's --

12          THE COURT:  I'm not attempting to read the tea

13  leaves, but I do take seriously the fact that he expects

14  you to be able to distinguish.  And so far, I have not

15  heard why this defendant should be distinguished from the

16  others that he released where there were specific

17  allegations of violent activity.

18          MR. GALEOTTI:  But we have that from September

19  with this individual.  We have two instances of

20  obstruction, which we did not necessarily have with the

21  other individuals.

22          In addition, we have the fact that this

23  defendant has significant resources, more so than the

24  other individuals in this case.  We've outlined at least

25  $1.6 million of fraud proceeds that went to Mr. Lanni.

33

Proceedings

1  And I would note, if we get to it, that one of the
2  properties that is suggested being posted, the one that's
3  part of the trust, appears to have been partially
4  purchased with proceeds -- crime proceeds funneled to Mr.
5  Lanni by co-defendant Jimmy Laforte.  So that's another
6  issue with that property.
7         But let me stick with your Honor's question.
8  Your honor, it's the recent acts of violence.  It's the
9  power that this defendant has.  It's the resources that
10  this defendant has, and it's the fact that he's been
11  engaged in other attempts of obstruction and witness
12  tampering that make him different than the other
13  individuals.
14         MR. SOSINSKY:  Can I respond?
15         THE COURT:  Yes, of course.
16         MR. SOSINSKY:  Briefly.  I know you have many
17  other cases to attend to, Judge.  The other defendants in
18  this case, each and every one of them, are charged in
19  other substantive counts with acts of violence.  He's
20  not.
21         This notion that whatever happened down in Toms
22  River on Labor Day weekend, an afternoon when he's in a
23  bar and establishment having dinner and having drinks,
24  has anything to do with that compared to evidence that
25  they presented to a federal grand jury that resulted in

34

Proceedings

1   charging people with acts of violence, acts of witness

2   intimidation, going after people.  Judge, those people

3   were all released.  Those people got released, and

4   they're indicted for doing the very thing somehow that

5   he's trying to equate with that, Judge.  Those people

6   were no witnesses against the Gambino crime family.

7           And by the way, Judge, by the way, it was

8   either last week before Judge Block or the week before,

9   before Judge Reyes, what the government said took place

10  after the incident in which him and his friend are asked

11  to leave, and the police are there and they take their

12  ID, is that the owners of the establishment reached out.

13  This is what they represented to a court.

14          It's in one of the transcripts.  I just forget

15  if it was Judge Block or Judge Reyes.  That the owner of

16  the establishment reached out to see who these guys were,

17  not this business of somebody reaching out to them and

18  saying, you know these guys are Gambinos, following which

19  they dropped charges.

20          And by the way, no one has dropped any charges.

21  Okay?  There was a court date on Monday where local

22  counsel went to court on his behalf, and the case got

23  adjourned so that, hopefully upon his release, he'll be

24  in attendance with Court permission to attend to that.

25  So no case was dropped.

Proceedings

1          But what the government learned in between

2    their first assertions and now, was we understand they

3    met with these people and they told them they can't

4    identify Joseph Lanni as being the person who did it.

5    The government well knows, well knows, that the people

6    who they interviewed at their office did not say it was

7    Joseph Lanni who ever assaulted them, or the other

8    gentleman for that matter.  Okay?  They know --

9               THE COURT:  Well, wait.

10              MR. SOSINSKY:  -- that because they've met with

11   them.

12              THE COURT:  I'm just going to cut through all

13   of this and I'm going to say, look, I think bail is

14   appropriate here.  I'm not going to order detention.

15   However, given the government's representation that

16   Mr. Lanni has more significant assets than some of the

17   other members of this group, and my concern, which I

18   raised even before we heard from the government, that I'm

19   not sure this trust -- and now we have another issue with

20   the trust, which is perhaps we need a (indiscernible)

21   hearing before we take it as collateral.

22              I think the package that you submitted today is

23   insufficient.  So I'm not going to order him permanently

24   detained.  I'm not making that finding that he is a risk

25   of flight.  But I am saying today the package is not

36

Proceedings

1  enough, given all of the circumstances that the

2  government has raised.  And I would urge you to go out

3  there and come back with something, you know, that deals

4  with the issues that we've talked about today.

5           MR. SOSINSKY:  I'll certainly do that, but

6  Your Honor, because we've been doing our best as quickly

7  as we can to see if there was anything else out there.

8  Your Honor, we know, and I think it's indisputable, that

9  the Brooklyn property alone is worth $2 million.  Okay?

10 We know that.  I can provide the assessment from two days

11 ago and the mortgage statement.  So if your Honor --

12           THE COURT:  No.  I would not.  I need two

13 pieces of property that are free and clear of any

14 concerns.

15           MR. SOSINSKY:  But what I'm asking, I think the

16 Brooklyn property is free of any concerns.

17           THE COURT:  Right.  But --

18           MR. SOSINSKY:  I just want to be focused.  No,

19 I understand.  Okay.  But that does have a mortgage.

20 There's nothing wrong with that as long as the equity in

21 it is --

22           THE COURT:  No, no, no.  I'm saying I don't

23 care about the mortgage.

24           MR. SOSINSKY:  Okay.  Yes.

25           THE COURT:  What I care about is the legal

37

Proceedings

1    ability to post a trust, a property that's held in trust.

2    And the government's -- I mean, you know, it's up to the

3    government to raise the issue of where the money came

4    from.  But that was also a concern.  A property that is

5    not encumbered in any way whatsoever would be --

6              MR. SOSINSKY:  Ideal.

7              THE COURT:  -- ideal.

8              MR. SOSINSKY:  But, Judge, if I come back to

9    you with another property, but -- and it's a friend or

10   family member, and the equity in it is $500,000 or

11   $600,000, I just want to know how we should be spending

12   our time.  Is approximately $2.5 versus $3 million in a

13   case like this, if there are no concerns with that

14   property, going to satisfy the Court, that that's okay?

15             THE COURT:  You know, I hesitate to set a

16   specific number.

17             MR. SOSINSKY:  Okay.

18             THE COURT:  Because you may not be able to

19   reach it, and that might not be a fair thing to do.

20             MR. SOSINSKY:  What about the suretors, Judge?

21   Are the four -- the owners of that property, is his

22   85-year-old mother?

23             THE COURT:  I haven't heard anything from the

24   government to suggest that any of the suretors --

25             MR. SOSINSKY:  Okay.

38

Proceedings

1          MR. GALEOTTI:  We haven't raised that on the

2   information we've received.

3          THE COURT:  Okay.  All right.  So the suretors

4   are fine.

5          MR. SOSINSKY:  Thank you.

6          THE COURT:  Okay?  So come back.

7          MR. SOSINSKY:  We will.

8          THE COURT:  It may not be before me, you know?

9          MR. SOSINSKY:  Well, hopefully it will be.

10         THE COURT:  All right.  Thank you.

11         MR. GALEOTTI:  Thank you, your Honor.

12         MR. SOSINSKY:  Thank you, your Honor.

13                    (Matter concluded)

14                         -oOo-

15

16

17

18

19

20

21

22

23

24

25

39

# C E R T I F I C A T E

      I, MICHELLE COSTANTINO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

      I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

      IN WITNESS WHEREOF, I hereunto set my hand this **4th** day of **December**, 2023.

*Michelle Costantino*

_____

Transcriptions Plus II, Inc.